George H. **BAILEY** as Administrator Ad Litem of the Estate of Harold Vernon, Harvey Lurie, Emily Vernon, Plaintiffs,

v.

**TRENAM SIMMONS, KEMKER, SCHARF, BARKIN, FRYE & O'NEILL, P.A., Defendant.**

No. 88–6131–CIV–MOORE.

United States District Court, S.D. Florida, Miami Division.

Aug. 29, 1996.

Ira C. Hatch, Ira C. Hatch, P.A., Fort Lauderdale, FL, for Plaintiffs.

Stanford L. Bohrer, Holland & Knight, Miami, FL, Carol A. Licko, Thomson Muraro Razook & Hart, P.A., Miami, FL, for Defendant.

### ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the parties' Cross–Motions for Summary Judgment. (Docket Nos. 549 and 551).

1. Since the filing of the Fourth Amended Complaint, Count I, alleging federal securities fraud under 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), has been dismissed by stipulation, because of the Supreme Court decision in *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). (Docket No. 538). The Complaint also

### STATEMENT OF THE CASE

This action arises from Plaintiffs' failed 1986 investments in Freedom Savings and Loan Association ("Freedom"). Defendant ("Trenam") is a law firm that represented Freedom as general legal counsel during the time in which actions giving rise to this case allegedly occurred. In their Fourth Amended Complaint ("Complaint"), Plaintiffs claim that Defendant made false statements of fact and omitted material facts in connection with the sale of certain securities.[1] The Complaint includes federal and state RICO claims, state securities law claims, and an allegation of common law fraud.

### A. Summary judgment standards

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Twiss v. Kury,* 25 F.3d 1551 (11th Cir.1994).

In assessing whether the movant has met this burden, the Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608. The party opposing a motion for summary judgment need not respond to a summary judgment motion with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Id.* at 160, 90 S.Ct.

included as Defendants the Federal Deposit Insurance Corporation as Receiver for Freedom Savings and Loan Association and the Federal Deposit Insurance Corporation as Manager of the Federal Savings and Loan Insurance Corporation Resolution Fund. These parties have been dismissed by stipulation. (Docket No. 571).

at 1609–10. If a response is required the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue of material fact." Fed.R.Civ.P. 56(e). There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### *RICO*

■ Counts II and III of the Complaint allege federal RICO violations. 18 U.S.C. § 1962(c). Counts VI and VII similarly allege violations of Florida's RICO statute. F.S.A. § 772.103(3). Defendant seeks summary judgment on those counts arguing that the undisputed facts of this case fail to establish RICO liability. To prevail on a RICO claim, Plaintiffs must prove that Defendant: (1) caused an injury to the Plaintiffs' business or property as the result of (2) the conduct of (3) an enterprise (4) through a pattern of (5) racketeering activity. *Hibiscus Assoc. v. Bd. of Trustees*, 50 F.3d 908, 920 (11th Cir.1995). Plaintiffs must also prove that Defendant participated in the operation or management of the enterprise itself. *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). In Count II of the Complaint, the enterprise is defined as an association of Defendant, Freedom, the investment firm of Drexel Burnham Lambert, Incorporated ("Drexel"), and James D'Aquila, a vice president of Drexel and member of Freedom's board of directors. In Count III, the enterprise is simply defined as Freedom itself.

■ In February of 1990, the parties to this action prepared a Joint Pre–Trial Stipulation ("Stipulation"). In that document the parties agreed that:

[Defendant] Trenam Simmons's only relationship with Freedom was as its attorneys providing legal services to Freedom. The legal services Trenam Simmons provided for Freedom were typical of the work normally provided by attorneys for clients in such transactions. The parties do not stipulate as to what other activities Trenam Simmons may have been involved in, if any.

(Stipulation at pp. 17–18). By this statement, and more particular statements made in the Stipulation, it is made clear Defendant's actions in this case exposed it to no RICO liability. Cases that have come down after the Supreme Court's decision in *Reves* establish that providing standard legal services does not create RICO liability under the operation and management standard. For example, in *Nolte v. Pearson*, a directed verdict in favor of defendant was upheld where the court found that a law firm's drafting of documents sent to prospective investors based on information provided by the client company did not establish RICO liability even though the court found a massive fraud had been committed, and that investors had relied on the documents prepared by the law firm. 994 F.2d 1311 (8th Cir.1993); *see also Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir.1994) (attorney who provided legal services in a real estate deal did not participate in the operation or management of an enterprise for RICO purposes); *In re: Cascade Sec. Litig.*, 840 F.Supp 1558 (S.D.Fla.1993) (drafting of false press releases and reckless disregard of a company's financial condition is not enough to create RICO liability on the part of a law firm); *Wiselman v. Oppenheimer*, 835 F.Supp. 1398 (M.D.Fla.1993) (the rendition of professional services by a financial services company was not equivalent to operation or management).

Throughout both their own summary judgment and their opposition to Defendant's motion, Plaintiffs constantly refer to discovery materials gathered prior to the Stipulation. Plaintiffs' meager attempts to argue their way out of the Stipulation are unavailing.[2]

---

**2.** Plaintiffs merely state in a footnote to their opposition memo that since the Stipulation was prepared while the First Amended Complaint was the operative one and before the *Reves* and *Central* decisions came down, "there is some question as to whether or not the Joint Pretrial Stipulation is still binding on the parties." Plaintiffs fail to elaborate on what this question may be.

The Court finds their refusal to meaningfully address the Stipulation during the summary judgment proceedings both curious and instructive. Plaintiffs clearly have provided the Court no reason to disregard the Stipulation and, therefore, both parties are bound by the facts agreed to in that document. *Feazell v. Tropicana Products, Inc.*, 819 F.2d 1036, 1040 (11th Cir.1987).

Accordingly, Defendant is entitled to summary judgment on Counts II and III of the Complaint. Defendant is also entitled to summary judgment on Counts VI and VII. Florida's RICO statute uses the same language to indicate the level of involvement necessary for RICO liability. 18 U.S.C. § 1962(c), F.S.A. § 772.103(3). There appears to be no reason to believe that the operation and management test of *Reves* would not apply to Florida's RICO statute. 507 U.S. at 184–86, 113 S.Ct. at 1173; *see e.g., Jones v. Childers*, 18 F.3d 899, 910 (11th Cir.1994) (interpretation of "pattern of criminal activity" under Florida RICO informed by case law interpreting the federal RICO statute).

### SECURITIES FRAUD

■ Counts IV and V of the Complaint allege violations of Florida securities laws. In order for liability to attach on these Counts, Defendant must be found to be either a seller of a security or a "director, officer, partner, or agent of or for" the seller of the securities. F.S.A. § 517.211(1), (2). Defendant argues, and the Court agrees that, based on the undisputed facts of this case, Defendant has no liability on Counts IV and V. The parties have stipulated that Defendant was neither a director, officer, or partner of Freedom. The only basis of liability would be a finding that Defendant was an agent of Freedom with respect to the sale of securities to Plaintiffs. In addition to being an agent, Defendant must also have "personally participated or aided in making the sale." F.S.A. § 517.211(1), (2). This Court addressed this very issue in *In re Sahlen & Assoc., Inc. Sec. Litig.*, 773 F.Supp. 342, 372 (S.D.Fla.1991) (Hoeveler, D.J.), holding that a "plaintiff may recover under § 517.211 from ... any officer, director, partner or agent of such a seller who has solicited the

sale of the securities on his own behalf or on behalf of the seller." He "determine[d] that conduct sufficient to constitute solicitation for purposes § 517.211 liability is similar to that deemed sufficient by the Supreme Court in *Pinter v. Dahl* [486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)] to hold one liable as a 'seller' under § 12(2) of the Securities Act of 1933." *Id.* at n. 40; *see also E.F. Hutton & Co. v. Rousseff*, 537 So.2d 978 (Fla.) *answer to certified question conformed to* 867 F.2d 1281 (11th Cir.1989) (effect of § 517.211 is similar to that of § 12(2) of the federal securities act).

In *Pinter*, the Supreme Court reaffirmed the principal that liability as a "seller" under § 12(1) of the Securities Act, 15 U.S.C. § 771(1) is not restricted to those who actually pass title to the securities, but is expansive enough to encompass the entire selling process, including the seller/agent transaction. 486 U.S. at 643, 108 S.Ct. at 2076. The Court placed limits on this expansiveness by stating that liability only extends to persons who successfully solicit the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner. *Id.* at 647, 108 S.Ct. at 2078–79. The Court declined to impose liability merely on the basis of substantial participation in the transaction, fearing that such a basis would extend liability to participants only remotely related to the relevant aspects of the sales transaction, specifically mentioning "securities professionals such as accountants and lawyers whose involvement is only the performance of their professional services...." *Id.* at 651, 108 S.Ct. at 2081. The reasoning behind this decision was that "[t]he buyer does not, in any meaningful sense, purchase the security from such a person." "Nor do such persons solicit the purchase of securities as that term is understood in common parlance." *Ryder International Corp. v. First American National Bank*, 943 F.2d 1521, 1527 (11th Cir.1991). This Court is convinced, as was Judge Hoeveler in *Sahlen*, that Defendant must be shown to have provided more than standard legal services to Freedom in order to impose liability as an agent under § 517.211. 733 F.Supp. at 372 n. 40. The stipulated facts of this case clearly establish that Plaintiffs can-

not do this, and therefore summary judgment is appropriate on Counts IV and V.

### COMMON LAW FRAUD

 Finally, Defendant seeks summary judgment of Count VIII of the Complaint, alleging common law fraud. To prevail on such a claim, Plaintiffs must prove: (1) a false statement of material fact; (2) Defendant's knowledge that the statement is false; (3) Defendant's intention that Plaintiffs rely on the statement; and (4) injury to Plaintiffs acting in reliance on the statement. *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985). To be actionable, fraudulent misrepresentation must be of material fact rather than mere opinion or misrepresentation of law. *Capps Agency, Inc. v. MCI Telecommunications Corp.,* 863 F.Supp. 1555 (M.D.Fla.), *affirmed,* 24 F.3d 254 (1993). The basis of this fraud claim appears to be Defendant's alleged role in the preparation of a disclosure letter sent to Plaintiffs prior to their purchase of the securities from Freedom. (Complaint at ¶ 69). Here again, Plaintiffs have stipulated themselves out of a claim. They agree that:

Kaufman [Senior Vice President, Chief Financial Officer, and Treasurer of Freedom] and the other senior officers at Freedom reviewed and revised the draft of the Disclosure Letter, were responsible for the approval of the final text, and approved the final text of the Disclosure Letter as executed by [Freedom President and CEO] Klingler. Each statement in the Disclosure Letter is Freedom's statement, and reflects Freedom's determination, after consultation with [Trenam Simmons attorney] Leisner, among others, of what was appropriate to say or not say. Thus the final decisions regarding what to include and what to omit in the Disclosure Letter were solely the decision of Freedom, not Leisner or Trenam Simmons.

(Stipulation at p. 28). It is also agreed that Defendant had no oral or written communication with Plaintiffs regarding the substance or terms of the sale of the securities. (Stipulation at 18). Plaintiffs' argument is then that Defendant failed to disclose material facts in the disclosure letter. Plaintiffs have not established a duty to disclose on the part of Defendant. Without such a duty, an omission does not amount to misrepresentation. *In re Crown Auto Dealerships, Inc.,* 187 B.R. 1009, 1017 (M.D.Fla.1995). Accordingly, Defendant is entitled to summary judgment on Count VIII of the Complaint.

In summary, this Court GRANTS Defendant's Motion for Summary Judgment in its entirety and DENIES Plaintiffs' Motion for Summary Judgment. All pending motions not otherwise ruled on are DENIED AS MOOT.